THE STATE, THE ESTATE OF AARON RAYMOND ET AL.,
PROSECUTORS, v. THE MAYOR AND COUNCIL OF THE
BOROUGH OF RUTHERFORD.

The principle of frontage assessment for the special benefits arising from
street improvements is not necessarily wrong. ·If that mode in any
particular case properly distributes the benefits among the owners
benefited, there can be no objection to its use.

On *certiorari*.

Argued at February Term, 1893, before Justices DEPUE
and LIPPINCOTT.

For the prosecutors, *Addison Ely*.

For the defendants, *Copeland & Luce.*

. The opinion of the court was delivered by

LIPPINCOTT, J.   This *certiorari* brings up for review the
final assessment for grading Union avenue from Erie avenue
to the Passaic river, in the borough of Rutherford.

The whole length of the improvements was thirteen thou-
sand four hundred and nine and ninety-six one-hundredths
feet.   There are two plots assessed to the prosecutors.'   The
plot on the northwesterly side of the avenue has a frontage
thereon of two thousand and sixty-five and six one-hundredths
feet, and is designated as plot No. 47 on the assessment map;
and is assessed for the sum of $1,497.16.   The plot on the
southeasterly side of the avenue has a frontage thereon of
two thousand and sixty-two and fifty one-hundredths feet,
and is designated as plot No. 81 on the assessment map, and
is assessed for the sum of $1,495.31.   The total cost and
expense of the improvement amounted to the sum of
$9,706.43.

The whole of the amount, with the exception of $183.44,
was assessed as benefits received upon the owners of lands
claimed to have been benefited.

This sum of $183.44 was by the commissioners of assess-. ments adjudged to be an excess of benefits, and was placed upon the borough at large.

The reasons for setting aside the assessment will be taken up in the order in which they were discussed in the argument.

The sixth reason or objection is that the commissioners making the assessment are taxpayers in the borough, and therefore are not disinterested.

The objection is not well founded.  By the fifth section of the act entitled "A further supplement to an act entitled 'An act for the formation of borough governments,' approved April 5th, 1878," which further supplement was approved April 1st, 1887 (*Pamph. L.*, *p.* 126), it is provided " that the mayor and council shall appoint three disinterested *freeholders* of said borough residing in different wards, if the borough be divided into wards, commissioners to make the assessment of the costs and expenses of such improvement or work done in the manner herein contemplated."  It is not contended that this provision of the statute was not followed in the appointment of these commissioners.  This statute was approved in the case of The State, ex rel. Poillon, *v.* The Mayor, &c., of Rutherford, at the June Term, 1891, of this court.  A memorandum of that decision is filed.

The seventh objection is that the commissioners admitted that they favored making every street pay for its own improvements ; that is, pay for itself, without regard to benefits, and that, therefore, they are not disinterested commissioners.

It appears from the evidence of Mr. Ely, a witness in the case, that after the making and filing of the report of assessment, and upon the hearing of objections at the time appointed for such hearing, in the discussion which ensued, the chairman of the commissioners said to him that it was the policy of the borough to assess the cost of the improvement of the streets upon the streets so improved, and they calculated to make each street pay for its own improvement, and that at this time there was no dissent expressed by the other commissioners.

It does not appear that their attention was again called to the matter in connection with this street improvement, or that it was anything more than a casual remark, and it is not such an expression as would warrant a legal conclusion that the commissioners were not disinterested. It might well be found, upon examination of all the circumstances, that the policy of making each street in the borough of Rutherford pay for its own improvement might not be discordant to the application, practically, of the principle that for such improvements lands should be assessed only in proportion to benefits received.

Union avenue was an old street or road, and a thoroughfare between Newark and Passaic, with the exception of that part which crosses the lands of the prosecutors. This old road, or old street, extends, as will be seen by referring to the map, from what is known as Erie avenue, running along the Erie railroad, to Riverside avenue. It connects with the Newark and Hackensack road on the east of the borough, and with the river road which leads from Newark to Passaic. It is one of the two thoroughfares in the borough of Rutherford. It is the principal road between Rutherford and Passaic. The river road is what is now marked on the assessment map as Riverside avenue. It is about two thousand to two thousand one hundred feet from the point where Riverside avenue intersects Union avenue to the river. The lands of the prosecutors lie west of Riverside avenue, and extend as shown on the map of this section of country, from the Erie railroad on the north to about a mile to the south; these lands are bounded on the west by the river, and the tract of their land through which Union avenue, as now graded, extends contains about one hundred and fifty acres. Union avenue, before it was graded, did not extend through these lands but ended at Riverside avenue. Before Union avenue was graded there existed no street through their lands. There was, as shown by the evidence, a sort of a passable road or driveway through the lands of the prosecutors from Riverside avenue to the river, a little to the north of the middle of their property. When it was contemplated to grade Union avenue the prose-

cutors dedicated to the borough of Rutherford the land needed for its extension from Riverside avenue, sometimes called "River road," to the river, a dedication practically coinciding with the old driveway already there.

The commissioners' map of the improvement through the lands of the prosecutors shows a number of cross streets intersecting Union avenue. These appear to have been made in accordance with a plan of development of this property by the prosecutors. None of these cross streets are yet public streets, by dedication or otherwise. It is shown that the prosecutors had done some filling and grading in reference to the lines of these streets.

There can be but little question that this improvement renders the lands of the plaintiffs much more available for the only purpose for which they hold them. Before this improvement these lands were almost entirely without any outlet and unavailable. It is apparent, from the evidence, that the whole of this large tract of land was held by the prosecutors with the expectation of bringing it into market. The feasibility of the erection of a bridge over the Passaic river at the end of Union street as now graded has been much discussed by them. The situation of the lands, as shown in connection with their communication with the borough of Rutherford and other places, indicates at once that this improvement is one very desirable to the lands of the prosecutors.

The prosecutors themselves dedicated the lands for this improvement by deeds of dedication formally executed and delivered to the borough, and also with others formally petitioned for this improvement, and, as is shown by the evidence, expected to be quite heavily assessed for its benefits.

I notice that in the argument and brief of counsel for the prosecutors, it is contended that the assessment includes various items of expenses not properly chargeable to the landowners assessed. It appears that no objection was taken on this ground, although the prosecutors appeared before the mayor and council before the report was confirmed.

Upon the argument objections were urged to certain items, amounting in all to $185.19. This expense of $185.19 consists of four items in the statement of costs:

1. March 16th, payment to W. N. Jacobus, temporary walks............................................. $69 00
2. November 16th, payment to McKinney for relaying drain........................................... 21 00
3. December 21st, legal expenses in making searches and procuring releases.............................. 75 00
4. January 18th, paid Galloway for curbing and guttering............................................. 20 19

Total ........................................... $185 19

The making of the drains, walks and curbing and guttering was entirely necessary to the proper grading, as shown by the evidence.

The item of legal expenses was for services in relation to the dedication of that portion of Union street extending through the prosecutor's lands.

These expenses were incident to the work of grading the street. *State, Vanderbeck et al.,* v. *Jersey City,* 5 *Dutcher* 448; *State, Hand et al.,* v. *Elizabeth,* 1 *Vroom* 365; *S. C.,* 2 *Id.* 551; *Davis* v. *Newark,* 25 *Id.* 144.

I think these items are properly included in the costs and expenses of the grading.

It is to be noticed that there is no reason filed covering this objection.

The second reason is that the commissioners in making the assessment have not included therein all the lands benefited by the improvement. The commissioners under their oaths certify that no lands, except those assessed, were benefited, and their judgment, so far as the general area over which the assessment extends, remains unassailed by any evidence in the case. The commissioners determined that no other lands than those fronting on Union avenue were benefited.

I think this judgment is not contradicted by the evidence on the part of the prosecutors, and so far as the evidence on the part of the defendant is concerned, their judgment is fully confirmed. The testimony of the commissioners upon this point is fully sustained by the evidence of those witnesses whose judgment in this matter can be regarded.

There were only four particular plots to which the prosecutors raised any question in respect to this reason. One was a strip of about five feet wide, supposed to belong to Mr. Jackson. It is very difficult to determine whether this is included in the assessment or not. When he received his assessment bill for benefits to his plot of land, he discovered he had been assessed for sixty-seven feet instead of seventy-two feet, and under the evidence I cannot ascertain that he owns any more than sixty-seven feet. There were three small plots in the rear of plots 60, 72 and 76, which the prosecutors assert should have been assessed, on the ground that all lands to the depth of one hundred and fifty feet should have been assessed.

I see no reason why the judgment of the commissioners should be disturbed in this matter. The evidence is quite convincing that these plots were not benefited. There is some evidence of benefits received by them.

The conclusion reached is that they were not benefited; but if so, the utmost assessment which could be laid upon all these plots of land according to the evidence would not exceed the sum of $75.

The judgment of the commissioners must stand. There is no convincing evidence against it. *Hegeman* v. *Passaic*, 22 *Vroom* 109; *Burlington* v. *Atlantic*, 20 *Id.* 408.

Assuming these parcels should have been assessed, $75 would have been the utmost assessment for the whole four of them, and the assessment against the borough at large was greater than this, and therefore no injury has arisen to the prosecutors by this omission. *State, Righter,* v. *Newark,* 16 *Vroom* 104; *Davis* v. *Newark,* 25 *Id.* 144.

In the third reason the objection urged is that the commissioners have not defined the extent of the lands of the prose-

cutors and other landowners fronting on said avenue upon which the assessment is made a lien.

Now, whether the lands of the prosecutors have been benefited or not, or whether assessed in excess of benefits, is a question to be discussed by itself, and so can the question whether the frontage assessment is upon correct principles or not, but the evidence and the report of the commissioners here answer fully this objection. The plots of the prosecutors' lands are laid down upon the assessment map and referred to in the report of the commissioners by plot numbers as laid down on the map, and they show the frontage of each lot on either side of Union avenue. The map is scaled, and the dimensions of the plots assessed are determined and marked exactly the same as the plots of other landowners fronting the improvement.

The contention of the prosecutors is that the assessment, even if correctly laid as to its distribution on the frontage, is a lien upon large tracts of lands of the prosecutors, some parts of which may not be benefited, whilst the front to some certain depth might be benefited by assessment imposed. This situation, if correct, would not call for a reversal of the assessment, but only for some action directing the commissioners to properly apportion the assessments.

And it may be in this case that this would be a very proper proceeding, but the assessment of benefits to the prosecutors will not be set aside for this reason.

The fifth reason urged for nullifying this assessment against the prosecutors is that the whole assessment, including that made upon the lands of the prosecutors, is made upon the frontage of lands fronting on said avenue, without regard to the size, value or depth of the lots assessed.

This contention is not sustained by the evidence.

The report of the commissioners is: "That we, and each of us, have personally and thoroughly examined the said Union avenue, and adjacent property, and lands specially benefited by said grading; that we have justly, fairly and equitably assessed the aforesaid cost and expense upon the

lands and real estate specially benefited by such improvement to the extent and not beyond such benefit, and that in making such assessment we have in each and every case had due regard and consideration to the benefits received by such lot and parcel of land from such improvement over and above all damages sustained by each of said lots or parcels of land, and that in no case have we assessed any lot or parcel of land more than the amount of such benefit."

This is the standard of assessment provided for by the borough laws governing this subject-matter. *Pamph. L.* 1887, *p.* 126, § 4.

I find no evidence assailing the area of the assessment, whatever may be said of the benefits accruing within it. The judgment of the commissioners was that the special benefits in this case were clearly limited to the frontage. It will be found that the rate of the various assessments is not always the same. In most instances it will be found that the conditions were nearly identical and there was but little reason for any difference.

But the judgment of the commissioners is that the benefits laid by them were special benefits, laid according to benefits bestowed, and not in excess thereof. There is no evidence that in laying the benefits, so far as there were benefits, upon the frontage, the commissioners did not conform to the principle of peculiar benefits.

The principle of frontage assessment is not necessarily wrong. If that mode properly distributes the benefits among the owners of property benefited, there can be no objection to its use. *Jersey City* v. *Howeth*, 1 *Vroom* 521 ; *Pudney* v. *Passaic*, 8 *Id.* 65.

The commissioners assessed all the lands which in their judgment were benefited. This judgment has not been successfully assailed by the evidence or facts of the case. *Hunt* v. *Rahway*, 10 *Vroom* 646.

The last reason to be discussed—the first among the reasons of the prosecutors—as an objection to this asssessment is that " the said assessment upon the lands of the prosecutors for

the said improvement is largely in excess of all benefits the said lands will derive from said improvement," and this includes a consideration of the contention of the prosecutors that a very large portion of this cost and expense should have been borne by the borough at large.

These questions were discussed at length by counsel and reviewed very voluminously in their briefs.

It cannot be expected that all the evidence and contentions arising out of it can be taken up and discussed. The report of the commissioners is before us, and the rule of law is clear that, upon these points, their judgment cannot be interfered with, unless the force of the circumstances and evidence convinces us that it is wrong, and that an injustice has been done.

The rule is well established that the assessments for benefits for street improvements, where the commissioners have been over the ground and examined the premises and made their report of estimates according to the principles prescribed in the charter, will not be set aside upon conflicting evidence of the justice or sufficiency of said assessment.

It must clearly appear that injustice has been done before an assessment will be set aside upon all the facts.

This is the rule, notwithstanding the statute which authorizes the court to determine disputed questions of fact as well as law. *Jeliff* v. *Newark,* 19 *Vroom* 101 ; *Hegeman* v. *Passaic,* 22 *Id.* 109.

It will be remembered that the prosecutors were urgent applicants for this improvement, and that this improvement affords access to the populous part of Rutherford and other places from their lands along the river, and renders the lands of the prosecutors available for almost any use—that of residence, or other uses; that this improvement is an outlet to other places besides Rutherford. It opens a large tract of land for use; opens it to the main portion of Rutherford, and their river front made available. The improvements run nearly through the middle of a large tract belonging to the prosecutors, and according to their own plans opens it up to development.

. The question of benefits and damages to their lands has been extensively discussed and many witnesses have been called on both sides. It appears in evidence that the prosecutors, before the improvement was commenced and at a time when they had joined with others in applying for it, were willing to be assessed quite heavily for it.

Some of the witnesses think that a portion of the expenses should have been a burden upon the borough; some fix a small proportion, others fix a large proportion; others contend that it should all be borne by the land benefited. The conclusion, from an examination of the evidence in connection with the report of the commissioners, is that the great weight of the evidence is in support of the assessment as made.

A discussion of this evidence in detail appears to be useless. The fact that the evidence is conflicting as to benefits does not suffice to disturb the assessment. *Jeliff* v. *Newark,* 19 *Vroom* 101; *Hegeman* v. *Passaic,* 22 *Id.* 109.

The assessment must be sustained.