THE STATE, THE NORTHERN RAILROAD COMPANY OF NEW JERSEY, JOHN E. TUTTLE AND LOUIS E. TUTTLE, PROSECUTORS, v. THE MAYOR AND CITY COUNCIL OF ENGLEWOOD.

Argued February 16, 1898—Decided June 13, 1898.

The organic law of a class of cities authorized street openings, except as thereinafter provided, only upon the petition of the owners of a specified proportion of property affected, subject to prevention on the remonstrance of the owners of a specified proportion of property subject to assessment therefor. A later section of the same statute authorized street openings whenever, in the opinion of the governing body of the city, the public good might require it. Upon a petition and notwithstanding a remonstrance, a city council ordained the opening of a street and essayed to make awards and assessments therefor. On proof that the petitioners did not include the owners of the required proportion of property to give the council jurisdiction at the instance of property-owners, and that the remonstrance did include the owners of the proportion of property sufficient to prevent the improvement at such instance—*Held* that, in the absence of a determination expressed in the ordinance or otherwise appearing of record in the municipal proceedings, that in the opinion of the council the public good required the street, the ordinance was invalid.

On *certiorari*.

Before Justices DIXON and COLLINS.

For the Northern Railroad Company, *Charles L. Corbin*.

For the Messrs. Tuttle, *George R. Dutton*.

For the defendants, *Raymond P. Wortendyke*.

The opinion of the court was delivered by

COLLINS, J.   These writs bring up proceedings of the defendant to open Van Brunt street, Englewood, and to take therefor lands of the prosecutors on an award of damages and an assessment of benefits.

The defendant's incorporation is under "An act authorizing any town, township or borough, or part thereof, containing a population exceeding five thousand inhabitants, to be incorporated as a city after a vote of the people, and providing for the government and powers of such cities," approved March 22d, 1895. *Gen. Stat., p.* 762. The pertinent legislation is an amendment approved April 6th, 1897 (*Pamph. L., p.* 155), and is as follows:

"9. Section sixty-three of the said act is amended so as to read as follows:

"63. Streets or sections of streets shall be laid out, opened, straightened, extended, widened or otherwise changed as to their boundaries, vacated, graded, flagged, macadamized, paved, curbed, guttered or otherwise improved, except as hereinafter otherwise provided, in the following manner and not otherwise: A petition in writing signed by the owners of one-sixth of the property fronting on the improvement desired shall be presented to the council, setting forth accurately the improvement desired; if the council shall decide in favor of the petition the same shall be referred to the commissioners of assessment and a city surveyor not interested in such improvement; * * * they shall under their hands make a report of the facts ascertained and of the appraisements, estimates, determinations and assessments made by them concerning said improvement, and shall file such report and their map with the clerk of the city; thereupon the said clerk shall cause notice of the filing of said map and report, * * * which * * * shall state the time and place when and where the council will meet to hear and consider any objections to said report or to the improvement, which shall be presented in writing; * * * if the council shall then determine to make said improvement notwithstanding any objections to the same, the said council shall confirm said awards * * * and pass an ordinance ordering said improvements to be made and completed in such manner as said council may direct, under the supervision of said commissioners of assessments; provided, the said council shall not proceed to make any such

improvement if the owners of the property subject to more than one-half of the assessments for the improvement shall remonstrate against the same being made; * * * the said council shall also pass a resolution directing the several sums awarded to be paid to the persons to whom the awards are made; * * * after the completion of said improvement the said commissioners shall ascertain and determine the actual net cost thereof and shall assess as hereinafter provided such actual net cost upon the lands specially benefited in proportion to the benefit received.

* * * * * * * * * *

"13. It shall be lawful for the common council or other governing body of any city of this state, whenever in their opinion the public good may require it, by ordinance, to lay out, accept and open any street, road, highway or alley within said city; to order and cause any street, road, highway or alley already laid out or which shall hereafter be laid out, to be vacated, straightened, altered or widened, and to take and appropriate for such purposes any lands and real estate, upon making compensation to the owner or owners thereof in the manner now or hereafter provided by law, in any such city, and they may, in their discretion, by ordinance, accept such lands as may be dedicated by the owner or owners thereof as public streets or alleys, and thereupon shall be bound to keep up, repair and maintain the same, to the same extent that they may be bound to keep up, repair and maintain streets or alleys laid out by other legal proceedings."

The section last quoted is a reproduction of "An act to enable cities to open streets, highways and alleys and to regulate and accept the same," approved March 5th, 1896. *Pamph. L., p.* 42. It was provided in the incorporating act of 1895 above cited that future general laws should not be applicable to the cities formed under it unless made so in terms. The act of 1896 was not so made applicable. How far this attempted restriction on subsequent legislation is valid, if indeed it does not render the whole act unconstitutional, need not be considered, as the act of 1897 is the latest legislative

utterance as to street openings in such cities and must be taken in its entirety. By it the normal control of that subject is vested in the owners of property affected, subject to the alternative of compulsory action by the council " whenever in their opinion the public good may require it."

A recital of power is not needed in an ordinance or resolution, and, ordinarily, where municipal action is by law made dependent upon a determination of necessity, expediency, the public good or a like prerequisite, such a determination will be inferred from the action itself. *State* v. *Jersey City,* 3 *Dutcher* 493, 498; *Stuyvesant* v. *Mayor, &c., of New York,* 7 *Cow.* 585. This rule has been applied only where there is no power to act at all in the premises except upon such a determination, and does not exist where jurisdiction depends upon a finding preliminary to action. *Townsend* v. *Hoyle,* 20 *Conn.* 1, 8; *Hoyt* v. *East Saginaw,* 19 *Mich.* 39.

We think that where such a determination is authority only for alternative action, the determination must affirmatively appear. Any other rule would leave it impossible to know whether the action was based upon such a determination or upon a mistake of fact as to the existence of the normal conditions authorizing it, and would in effect work a repeal of those conditions. In the case in hand the procedure of section 9 of the act of 1897 was followed. There was a petition by some of the owners along the proposed street and there was a remonstrance against making the improvement. Without any adjudication as to what the public good required the council proceeded to ordain the street. The proof establishes that the petitioners did not include the owners of one-sixth of the property fronting on the improvement and that the remonstrants did include the owners of property subject to more than one-half of the assessment. We have as much right to assume that the council were misled as to the proportions of ownership as we have to assume an unexpressed determination that the public good required the new street, and to find, therefore, support for the ordinance in section 13 of the act. On a like uncertainty such an ordinance might

resist collateral attack (*Methodist Church* v. *Baltimore*, 6 *Gill* 391), but on *certiorari* we think that jurisdictional authority must appear in the municipal record or the ordinance will fall. None appears in this record.

The prosecutors raise interesting incidental questions, but in view of this fundamental defect their decision would be gratuitous.

The municipal action certified must be set aside, with costs.