MICHAEL KIERNAN ET AL., DEFENDANTS IN ERROR, v. MAYOR AND ALDERMEN OF JERSEY CITY ET AL., PLAINTIFFS IN ERROR.

Argued July 8. 1910—Decided November 14. 1910.

1. Where mortgagors undertook to dedicate a portion of the mortgaged lands for a highway without the assent of the mortgagee— *Held*, that such dedication created no more than an equity in the public to have the land opened for a highway provided this did not interfere with the security of the mortgagee.

2. Jersey City having taken proceedings for the opening of Cornelison avenue across a portion of certain mortgaged lands, and the mortgagors having afterwards (but without the assent of the mortgagee) assumed to dedicate another portion of the mortgaged lands for a highway to be known as York street, the mortgagee subsequently filed his bill in chancery for the foreclosure of the mortgage, and joined the municipal corporation as a party defendant, setting up in the bill the proceedings taken for the opening of Cornelison avenue, but not specially averring the dedication of York street beyond including in the foreclosure bill a recital of certain conveyances made by the mortgagors with reference to York street and with reference to maps of the mortgaged premises publicly filed. which showed such a street; these maps and conveyances being the facts out of which the dedication of York street arose. The city answered the bill, averring that the mortgagee had consented to the taking and dedication of Cornelison avenue, and denying that there was any other matter in the bill necessary for the city to answer. A decree was made in the cause, pursuant to which an execution was issued to the sheriff, who sold thereunder the mortgaged lands, except so much as lay within the limits of Cornelison avenue, and the mortgagee became the purchaser at such sale. *Held*, that the rights of Jersey City, as representative of the public interest in York street were cut off by the foreclosure.

3. The primary purpose of a foreclosure bill is to show the grounds of the complainant's right to foreclose, and to bring before the court all the parties whose interests are sought to be foreclosed. If the bill does this, and a decree for complainant follows in due course, its effect is not limited nor the title made by sale thereunder impaired, by the fact that the complainant has failed to state every right or interest of the defendants that is subject to the mortgage.

On error to the Supreme Court.

For the plaintiffs in error, *Warren Dixon.*

For the defendants in error, *Collins & Corbin.*

The opinion of the court was delivered by

PITNEY, CHANCELLOR. This writ of error brings under review a judgment for the plaintiffs in an action of tort for a trespass upon certain lands in Jersey City. The trespass complained of was the laying of a public sewer under the authority of the municipal corporation, defendant. The plaintiffs showed title to the fee of the land, and the defendants sought to justify upon the ground that the *locus in quo* was a public street known as York street.

The history of the title was as follows:

Patrick Kiernan and others, by deed dated and recorded in the year 1868, conveyed a tract of land, including the *locus in quo,* to Salmon W. Hoyt and Joel Hoyt. The Messrs. Hoyt gave a purchase-money mortgage to Kiernan to secure the payment of $7,500, which was duly recorded.

In the year 1880 Kiernan filed a bill in chancery to foreclose this mortgage, making the Messrs. Hoyt and certain of their grantees and judgment creditors parties defendant, and including the mayor and aldermen of Jersey City as a party. The averments of the bill will be referred to below.

The foreclosure resulted in a decree made March 28th, 1881, pursuant to which a writ of execution was issued to the sheriff of Hudson county, who sold and conveyed a portion of the mortgaged lands, including the *locus in quo,* to Patrick Kiernan.

Patrick Kiernan died in 1887, and the property in question thereupon came to the plaintiffs through devise or inheritance.

While the Hoyts owned the equity of redemption, and in the year 1870 the municipal corporation laid out a street known as Cornelison avenue over a part of the mortgaged premises. Afterwards, and before the commencement of the foreclosure suit, and presumably about the year 1874 or 1875, the Messrs. Hoyt dedicated (so far as they had the right so

to do) a portion of the mortgaged premises for use as a public street, to be known as York street, intersecting Cornelison avenue. It seems to be conceded that such dedication was evidenced by the public filing of a map or maps and the making of conveyances of portions of the property described as fronting upon York street, and identified by lot numbers, &c., as laid down on such maps. We assume, for present purposes, that there was clear evidence of such dedication.

But there was no evidence that York street, as thus dedicated, was accepted by the municipal corporation or used by the public prior to the foreclosure, or was ever laid out or opened upon the ground. Nor did it appear that the fact of dedication or the evidences of it were brought to the attention of Patrick Kiernan until the commencement of the foreclosure suit, nor that he assented to such dedication.

It is insisted by counsel for plaintiff in error that the trial judge erred in excluding certain evidence offered for the purpose of showing the assent of Patrick Kiernan in his lifetime, and of the plaintiffs after his death. We think the evidence thus excluded had no legitimate tendency to show such assent. It is also urged that there was error in excluding certain evidence that would have tended, it is claimed, to show an acceptance of the dedication by the municipal authorities. Assuming that this evidence would have had such a tendency, its exclusion is not ground for reversal, because the city could not gain any rights for the public over the land as against the owners by accepting a dedication that had not been made by them or their predecessors in title.

The trial judge at the close of the case directed a verdict in favor of the plaintiffs for six cents damages, and the exception allowed to the defendants on this ruling furnishes the principal ground upon which a reversal of the judgment is asked for.

There was evidence from which it is contended that the jury might infer an actual user of York street by the public as a highway. The travel relied upon as evidential began some years after the death of Patrick Kiernan, and while the plaintiffs were the owners of the property. It appears that

Montgomery street, a street running parallel with the proposed York street, and two hundred feet distant northerly therefrom, was of such a grade that opposite to the premises in question it was carried upon an embankment, with retaining walls at the side. The foundation of one of the walls gave way, and the stone work settled down so as to render Montgomery street impassable. Pending the reconstruction of the retaining wall teams traveling that street were turned out across the adjacent private lands, and so went diagonally across to about the line of York street, in order to reach Cornelison avenue. This user, however, was manifestly travel *extra viam*, due to the temporary necessity of having a way as a substitute for Montgomery street; as if the public were asserting a right to deviate upon adjoining private property because of the highway being impassable. *Ang. & D. High.,* § 254; *Absor* v. *French,* 2 *Show.* 28; *Taylor* v. *Whitehead,* *Doug.* 744, 749; *Arnold* v. *Holbrook, L. R.,* 8 *Q. B.* 96, 100. We have not to pass upon the question whether this user was rightful, for the course of the temporary way did not at all correspond with the line of the alleged York street, and so there is nothing in this evidence that tends to prove a highway in York street.

For evidence of dedication, therefore, we are confined to the acts of the Messrs. Hoyt already mentioned.

It is too plain for argument that the Hoyts, as owners of the equity of redemption, could not impair the rights of Kiernan, the mortgagee, by anything that they might do. Their acts of dedication, unassented to by the mortgagee, created no more than an equity in the public to have the land opened for a highway, provided this did not interfere with the security of the mortgagee. See *Vanatta* v. *Jones,* 13 *Vroom* 561, 565; *Hague* v. *Inhabitants of West Hoboken,* 8 *C. E. Gr.* 354, 358.

The only debatable question is whether the foreclosure proceedings taken by Kiernan were efficacious to cut off this equity and vest the title of the property in the purchaser thereunder so absolutely as to constitute the subsequent act of the municipal corporation, in entering to open a sewer in the

supposed street, an act of trespass as against the plaintiffs claiming under him.

As already mentioned, the municipal corporation was made a party defendant in the foreclosure proceedings. By virtue of the ample powers conferred upon it by the legislature in respect to the laying out, opening and maintenance of streets and highways, it was, on familiar principles, the proper party to assert and defend the public rights in this behalf.

The bill of complaint sets up in the usual manner the indebtedness of the Messrs. Hoyt to the complainant, Patrick Kiernan, and the giving of the mortgage to secure the same; sets up sundry conveyances made by the mortgagors of portions of the mortgaged premises, and charges that the interests of the grantees and those claiming under them are subsequent to the encumbrance of the mortgage; sets up certain judgments, and charges that these likewise are subject to the mortgage. The bill also avers that the mayor and aldermen of Jersey City, in the year 1870, took proceedings for the opening of Cornelison avenue, and in the opening of it took possession of certain property particularly described, being a part of the lands included in the complainant's mortgage; charges that he has not released or discharged any portion of the mortgaged premises from the operation of the mortgage, and that if the mayor and aldermen of Jersey City have any claim upon the lands above described it is subsequent to said mortgage and with notice thereof. The bill charges that the principal money mentioned in the mortgage, with arrears of interest, remains due and unpaid, and prays that the defendants (including Jersey City) may answer the bill, and that they or some of them may be decreed to pay the mortgage debt; and that in default thereof the defendants and all persons claiming or to claim under them or any of them may be foreclosed of and from all right, title and equity of redemption in the mortgaged premises, or that the said premises, with the appurtenances, may be sold, and out of the moneys arising from such sale the mortgage debt and costs may be paid.

To this bill the mayor and aldermen of Jersey City inter-

posed an answer, wherein they admitted the proceedings for the opening of Cornelison avenue, and averred that the land covered thereby was taken and dedicated to public uses with the knowledge and consent of the complainant, and was by said complainant released and discharged from all legal and equitable claims of said complainant upon said property. The answer concludes with the following declaration: "These defendants deny that there is any other matter, cause or thing in the said complainant's bill of complaint contained material or necessary for these defendants to make answer unto," &c.

It should be noted that the bill, in referring to the conveyances made by the Messrs. Hoyt of parcels of the mortgaged premises, contains descriptions of these parcels by reference to lot numbers upon certain maps said to have been made and filed by the Messrs. Hoyt and adjoining landowners, and includes references to York street. These averments seem to show clear notice to Patrick Kiernan at the time of the commencement of the foreclosure of the facts and circumstances out of which the dedication by the Messrs. Hoyt arose. And of course the like notice was conveyed to the city by the averments of the bill. It chose to limit its defence to Cornelison avenue, making no reference in the answer to York street except as a proposed street, and then incidentally for the purpose of describing Cornelison avenue.

As a result of the suit a decree was made ascertaining the amount due upon the mortgage debt and decreeing that the mortgaged lands described in the bill of complaint be sold to pay and satisfy the money so found to be due to the complainant, and that for this purpose a writ of *fieri facias* should issue, directed to the sheriff of the county of Hudson; and that the defendants should be foreclosed from all equity of redemption in the mortgaged premises when sold pursuant to said decree. Under this decree, as limited by an order of the court subsequently made, the sheriff sold the mortgaged lands, excepting so much thereof as lay within the limits of Cornelison avenue, and Patrick Kiernan became the purchaser, as already mentioned.

It thus appears that while the bill of complaint specifically mentioned Cornelison avenue only, and the claim of the city therein, as a reason for making the city a party defendant, it at the same time set forth the facts that evinced the dedication of York street by the mortgagors; these being the same facts from which alone (so far as the present case shows) Patrick Kiernan had notice of the dedication of York street; that the bill averred that the mortgagee's rights were superior to the rights of the city in Cornelison avenue, and prayed that the city's rights, as well as the rights of all other defendants in the mortgaged premises, should be sold to satisfy the mortgage debt; that the city answered averring that Cornelison avenue was not subject to the mortgage, because the mortgagee had assented to its opening, and declaring that there was nothing else in the bill material or necessary for the city to make answer unto; and that a decree was made foreclosing the city from all rights in the mortgaged premises, saving with respect to Cornelison avenue.

In *Wade v. Miller,* 3 *Vroom* 296, where the widow of a deceased mortgagor (she not having joined in the mortgage) was made a party defendant to the foreclosure bill, on the ground that subsequent to the mortgage she had accepted a conveyance of the equity of redemption, and where she had submitted to a decree *pro confesso* and a final decree that the land should be sold to pay the mortgage debt and that she, with the other defendants, should be debarred and foreclosed of all equity of redemption, the Supreme Court held that since her right as doweress was superior to the mortgage title and had nothing in common with the right to redeem the land from encumbrances, the decree foreclosing the equity of redemption had no effect upon the right of the doweress as widow, on the ground that she had not been called upon, nor, in strictness, would have been permitted to set up in her answer a claim to dower paramount to the right of the mortgagee.

In *Wilkins v. Kirkbride,* 12 *C. E. Gr.* 93, Chancellor Runyon held that remaindermen who had not joined in a mort-

gage made by the life tenant were neither necessary nor proper parties to the foreclosure suit on the mortgage; and this on the ground that their rights were adverse and superior to those of the mortgagee and could not be affected by the foreclosure.

. In *Dickinson* v. *City of Trenton, 6 Stew. Eq.* 63, the same Chancellor·held on demurrer that an averment that the city was made a party to a suit for foreclosure of a mortgage, and a decree obtained therein and the premises sold, did not show that the city was debarred from selling the same premises under a valid assessment for municipal improvements where it was not alleged that the mortgage was prior to the assessment or that the assessment was attacked or called in question in the foreclosure suit.

It will be observed that these decisions had to do with outstanding claims that were adverse and superior to the mortgage under foreclosure.

But in *Chadwick* v. *Island Beach Co., 16 Stew. Eq.* 616, Chief Justice Beasley (the same judge who wrote the opinion in Wade *v.* Miller), speaking for this court, while placing the decision of the case upon another ground, inserted in his opinion a declaration to the effect that in a foreclosure suit in the ordinary form, a paramount title residing in one of the defendants is put in issue so far as to call for its disclosure by the defendant, even though such title is not expressly referred to and challenged by the bill. This he put upon two grounds, viz.: *First,* that the averment of the complainant in the foreclosure bill that he holds a mortgage in fee upon certain lands and prays that a sale may be made of such property, includes inferentially an assertion that a title paramount to the mortgage does not reside in any of the parties to the suit; and *second,* that a defendant is bound to disclose his title, because to remain silent and see the suit proceed to decree and sale is to be guilty of constructive fraud. Distinguishing, Wade *v.* Miller.

We are not here particularly concerned with the soundness of this *dictum* so far as it relates to interests held by a de-

fendant that are paramount to the mortgage; but we think the reasoning of the learned Chief Justice is quite satisfactory with respect to rights held by any of the defendants that are subject to the mortgage. There is an earlier *dictum* to the same effect by Mr. Justice Van Syckel in *Kirkpatrick* v. *Corning,* 11 *Stew. Eq.* 234, 248.

In *Wheeler & Wilson Manufacturing Co.* v. *Filer,* 7 *Dick. Ch. Rep.* 164, Vice Chancellor Pitney pointed out the difference between suits in equity commenced for the purpose of obtaining evidence or for some specific relief against the defendant personally, and a suit for the foreclosure of a mortgage, the latter being a proceeding *quasi in rem,* and the defendants being made parties only because they claim to have an interest in the subject-matter.

In *Dunham* v. *Doremus,* 10 *Dick. Ch. Rep.* 511, 513, this court held that a foreclosure bill need not define precisely the nature of the interests which the defendants have in the mortgaged lands where the nature of those rights is of no importance to the relief sought by the complainant.

This decision is, we think, dispositive of the present case. The prime purpose of a foreclosure bill is to show the grounds of the complainant's right to a foreclosure, and to bring before the court all the parties whose interests are sought to be foreclosed. If the bill does this, and a decree for complainant follows in due course, its effect is not limited, nor the title made by sale thereunder impaired, by the fact that the complainant has failed to state every right or interest of any of the defendants that is subject to the mortgage.

It results that the rights of Jersey City in York street were cut off by the foreclosure of the Kiernan mortgage, and since there was no evidence to show any prior or subsequent dedication by Kiernan himself, or those claiming under him, there was no ground for the city's contention that York street was a public highway at the time of the alleged trespass complained of.

The judgment under review should be affirmed.

Taylor v. New York, &c., R. R. Co.    *80 N. J. L.*

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GAR-
RISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES,
MINTURN, BOGERT, VREDENBURGH, VROOM, CONGDON,
JJ. 13.

*For reversal*—None.