LEHIGH VALLEY RAILROAD COMPANY OF NEW JERSEY ET AL., PROSECUTORS, v. MAYOR AND ALDERMEN OF JERSEY CITY ET AL., DEFENDANTS.

Argued February 21, 1911—Decided June 19, 1911.

1. The jurisdiction of the board of street and water commissioners of Jersey City to set on foot a public improvement pursuant to chapter 217 of the laws of 1895 (*Pamph. L.*, *p.* 407; *Gen. Stat.*, *p.* 484), arises out of the application of owners of property provided for in the first section of that act; and thereupon, by the second section, it is open to the board to grant or deny the application as in its discretion may be proper.

2. A certificate by commissioners of assessment that they did not assess in excess of benefits conferred, while carrying great weight as evidence, will not sustain an assessment when it otherwise clearly appears that the test of the amounts assessed was not the benefit conferred, but whether the burden of assessment equaled or exceeded the value of the property assessed.

3. An assessment cannot be sustained where it appears that the commissioners gave no attention to their duty of making the assessment, and left the matter entirely to their clerk.

4. Under the circumstances of this case an entire reassessment ordered. The practice in such case discussed.

5. The right of way of a railroad is not assessable for the construction of a sewer when the railroad track is elevated on a high trestle supported by concrete piers in a marsh, and consequently the drainage of the land confers no possible benefit to the existing railroad use.

6. But land used for other railroad purposes will be assessable, if benefited, to the extent of the benefit accruing for such purposes.

7. The mere fact that a landowner enjoys drainage of his land through a private sewer will not exempt him from assessment for the construction of a public sewer draining the same territory.

8. The fact that a sewer is laid on private property lying within the lines of a projected street will not exempt the owner of such property from assessment for benefits accruing by reason of such sewer, to other property of such owner abutting on such projected street, when said owner has taken no proceeding to enforce the removal of the sewer from his land.

On *certiorari.*

Before Justices GARRISON, PARKER and VOORHEES.

For the prosecutors, *Collins & Corbin.*

For the defendants, *Harry Lane* (*James J. Murphy,* on the brief).

The opinion of the court was delivered by

PARKER, J.   The prosecutors of this writ attack the regularity and amount of a final assessment for the construction of a main sewer in Jersey City.  The tract to be drained by the sewer consists of what was originally and in part still is marsh land, formerly flowed by the tide, and is substantially included within an irregular pentagon whose northeast and longest side of about two thousand two hundred feet bounds on a line parallel with and about one hundred feet south of Montgomery street, a main highway filled to an elevation of seven to ten feet or so above the marsh level; whose northwest side, about one thousand five hundred feet, runs along the foot of the precipitous slope of Bergen Hill; whose easterly side of about one thousand two hundred feet is about one hundred feet east of Centre street, and whose two southern sides of about one thousand five hundred feet each extend easterly and northwesterly parallel with and one hundred feet northerly from Grand street and Fairmount avenue, both of which are sewered.  Across this tract runs the right of way of the prosecutor Lehigh Valley Railroad Company of New Jersey, one hundred feet wide, from north to south; this is assessed, as well as a considerable amount of other property owned by the railroad; and the assessed lands of the prosecutors Hill and Kiernan are on both sides of York street, which is laid out parallel with and two hundred feet south of Montgomery street.  Parallel with the foot of the hill, and about one hundred feet southeast of it, runs Cornelison avenue, leaving room for a tier of lots between its northeast side and the foot of the hill.  The city owns a tract comprising in area about ten city

lots in this tier, lying opposite the northwest end of York street, which enters Cornelison avenue but does not cross it. Cornelison avenue is a traveled way; York street is not. In fact, it has recently been decided by the Court of Errors and Appeals that the westerly end of York street, where the Kiernan lots lie, had never been dedicated to public travel or legally acquired by the city, and that the laying of this very sewer at that point was a trespass as against the Kiernan interests. *Kiernan* v. *Jersey City,* 51 *Vroom* 273. Of this, more hereafter. ·

The sewer seems to have been built over the longest available route, especially as it is laid in a district of swamp or marsh land which is gradually being filled in and which presents no irregularities of contour calling for a devious course. It runs northeasterly through Cornelison avenue and southeasterly through York street, close to the western and northern sides of the pentagon, and then generally southerly and following the easterly boundary of the same to Grand street, where it empties into a trunk sewer. It is about.four thousand nine hundred feet, or nearly a mile long, and beginning with an eighteen-inch pipe sewer soon increases to a thirty-inch brick sewer, and by successive steps to fifty-four inches. The bottom being soft mud for the most part, piles had to be driven to support the sewer. All this made it very expensive; but the entire cost was assessed upon lands in the drainage district at the uniform rate of about one hundred and thirty-five dollars per lot of two thousand five hundred square feet. The sum of $1,354 was laid on the city at large, but this is accounted for by the ten lots of city property already mentioned, which were not specifically assessed.

The general situation having been thus roughly sketched, we proceed to a consideration of the grounds on which the assessment is attacked. And first, of those which bear on the assessment in its entirety.

There are two statutes under which this sewer might have been built and an assessment levied for resulting benefits. The first is the city charter (*Pamph. L.* 1871, *p.* 1094) ; the other is chapter 217 of the laws of 1895. *Pamph. L., p.* 407; *Gen.*

*Stat., p.* 484. It is contended that the assessment is not valid under either statute. That it cannot be supported under the charter may be assumed for present purposes. It is not pretended that the charter was relied on for jurisdiction by the board of street and water commissioners, which was the municipal body to which these matters are committed. On the contrary, the resolutions calling for its construction specifically rely on the act of 1895 just cited. Examining the proceedings in the light of that act, we fail to find the irregularity that prosecutors undertake to point out. Their proposition is that there should have been a specific judgment or determination by the board that the construction of the sewer was desirable, as a foundation of jurisdiction to proceed to its construction; and the case of *Northern Railroad* v. *Englewood, 33 Vroom* 188, is relied on. That case arose under a different statute and out of different conditions. In the Englewood case there was an alternative method provided for acquiring jurisdiction to make the improvement, viz., either by a petition of property owners interested, which jurisdiction could be ousted by a remonstrance from owners of property subject to more than half the total assessment; or (by another and later section) without such petition, whenever in the opinion of the governing body the public good may require it. In the Englewood case there was a petition of property owners, followed by a remonstrance sufficient to defeat it. The council passed an ordinance which did not indicate that it invoked the alternative power given by the later section, for it omitted to state that in their judgment the public good required such action; and it was held by this court that under the circumstances such recital or determination was necessary, because "any other rule would leave it impossible to know whether the action was based upon such a determination or upon a mistake of fact as to the normal conditions authorizing it, and would in effect work a repeal of those conditions."

The act of 1895, by its first section, gives power to the board "either on the application of any owner or owners of property liable to assessment * * * or in their discretion

to pave * * * sewer or otherwise improve any street," &c. Such application was made in due form by property owners.

Section 2, now invoked by prosecutors, provides that when in the judgment of said board it is desirable that an improvement be made, such board may direct specifications to be prepared, advertisement for bids to be made, and may award a provisional contract; after which (section 3) a preliminary assessment map is to be made and notice given by advertisement to persons interested; if objections in writing are presented representing properties liable to more than one-half of the probable assessment, the improvement shall not be proceeded with; "in case objections are not so presented, or if in the opinion of said board or body a sufficient reason has not been presented for stopping such improvement, an award of such provisional contract shall be then formally made."

The point made by prosecutors is that by section 2 the board must determine the desirability of the improvement in express terms in order to acquire jurisdiction. But a reading of the three sections together must make it plain that upon the proved facts the jurisdiction of the board to act was complete. It sprang out of the petition of property owners which appears in the case and is recited in the first resolution. Hence, while the judgment of the board as to the desirability of the improvement might prompt it to act either by way of granting or denying the prayer of the petition, the expression or non-expression of such judgment in no way affected its already acquired jurisdiction. That jurisdiction, as already appears, might be ousted by a proper remonstrance; but no such remonstrance was made, so it stood unimpaired.

The next point urged is that under the law it was necessary that the action of the board of street and water commissioners be concurred in by the board of finance of Jersey City; and that there was no such concurrence. The board of finance did pass a resolution of concurrence, which is attacked as insufficient because not properly reciting the resolution in question. It is sufficient to say that on examination of the concurring resolution we find it recites the substantial features of the first resolution sufficiently to identify it beyond any question,

and that we see no reason to require identification by a *verbatim* recital of the resolution itself.

The next two objections may be considered together. One is that the amount assessed is in excess of actual benefits; the other, that the assessment was made illegally and on a wrong principle. There seems to be no reason on file to support this last objection, but it appears to be involved in the determination of the other.

The report of the commissioners of assessment contains the usual statement that they have determined the actual amount of benefit to each lot and assessed accordingly; and that they have not assessed any lot more than it is actually benefited. Such a recital, as is well settled, carries great weight as evidence and can be overcome only by clear proof of great force. *Hunt* v. *Rahway*, 10 *Vroom* 646; *Moran* v. *Jersey City*, 29 *Id.* 144, 653. But in our estimation the counter proof has been adequate. We disregard the point that the sewer is of no benefit because laid at the surface of the marsh with manholes built up to the proposed grade of the streets through which it passes. A sewer below the grade of the marsh would be useless because it would promptly fill with water and would remain full. The immediate future of the lands sewered is a filling up to street grade, and this is actually in progress over a large part of the district. Under those circumstances, the level established for the sewer is manifestly not improper.

Some force must be given to the evidence tending to show that the sewer is unnecessarily large and expensive for its purpose. But important facts shown by the evidence are that the commissioners gave no particular attention to the making up of the assessment, but left it entirely to their clerk, one Brown, and that Brown in effect apportioned the whole cost of the sewer according to area or frontage, and on the principle that so long as the assessment did not exceed the value of the lot, it was a proper assessment. The three commissioners were called as witnesses by prosecutors, and admitted that substantially all that they did was to take Brown's figures and assent to a frontage assessment. While it has been held in a number of cases that an assessment by frontage is not invalid

where the benefits are distributed so that the frontage principle is applicable (see *Raymond* v. *Rutherford,* 26 *Vroom* 441; 27 *Id.* 340; *Dooling* v. *Ocean City,* 38 *Id.* 215), if the frontage principle is applied without consideration of benefits, the assessment cannot stand. *Hampson* v. *Paterson,* 7 *Id.* 159. That the principle of benefits was disregarded or ignored, we think, is demonstrated by the evidence, not only of the commissioners, but of Brown. Some of his testimony may properly be quoted:

"*Q.* My understanding is that you assessed the whole cost of this improvement upon the property improved—the part that was put on the city at large being for the property of the city within an area of this improvement?

"*A.* Yes.

"*Q.* So that the assessment on the lots in this section represents the total cost of the whole sewer?

"*A.* Yes.

"*Q.* And it is your practice, in making sewer assessments, I understand, to assess the total cost of the sewer upon the property?

"*A.* Where the assessments would not result in confiscation of the property.

"*Q.* You didn't work at this assessment by examining the lots and determining how much would be an enhancement in value on that particular lot by the construction of the sewer and then put it upon all of these lots pro rata, charging, however, an additional cost on the lots where the sewer ran directly in front of them, of an eighteen-inch sewer?

"*A.* Yes, sir.

"*Q.* The cost being distributed pro rata through the whole section?

"*A.* According to benefits received.

"*Q.* In every instance the cost of this assessment for actual benefits upon the lots is between five and six times the cost of an eighteen-inch sewer?

"*A.* About that; yes, sir.

"*Q.* And it is your practice, you say, to assess the full cost

of the sewer, and you do it by making an even burden on all of the section, per standard city lot, of so much?

"*A.* Yes.

. "*Q.* If the contract has been let at one hundred per cent. of the estimated price, so that the cost would be the estimate, then you would have assessed the same as the preliminary assessment?

"*A.* I certainly would, if the assessment didn't amount to a confiscation of the property.

"*Q.* What do you mean?

"*A.* More than the property is worth.

"*Q.* You assess the cost of sewers for improvements, unless they, in your judgment, exceed more than the whole value of the property?

"*A.* In the judgment of the commissioners more than the whole value of the property.

"*Q.* In other words, if the city is not going to get the property as a result of the assessment, you assess it; but if you think as a result of the assessment the landowner would turn it over to the city and say I am all gone, then you wouldn't assess the full cost?

"*A.* That is practically so."

Comment on this is needless. It is plain that not only was the assessment made upon a wrong principle, but that the commissioners gave no attention to their duties and left the whole matter to their clerk—a practice properly condemned in such cases as *State, Mann, prosecutor,* v. *Jersey City,* 4 *Zab.* 662; *State, Townsend,* v. *Jersey City,* 2 *Dutcher* 444; *State, Ogden, prosecutor,* v. *Hudson City,* 5 *Id.* 104, 111, and *State, Zabriskie, prosecutor,* v. *Hudson City, Id.* 115. Under such circumstances the recital of the report as to benefits having been considered, becomes worthless, and as there is other adequate evidence to indicate that the amount per lot is largely in excess of benefits, the assessment must be set aside.

The question then arises whether this action should extend only to the part of the total assessment levied against the prosecutors, or should include the entire assessment. That

this court has power to vacate the whole assessment in a proper case is established by precedents (*Bergen* v. *Van Horne,* 3 *Vroom* 490, 494; *State, Ropes, prosecutor,* v. *Essex Road Board,* 8 *Id.* 335, 338; *State, Graham, prosecutor,* v. *Paterson, Id.* 380, 385; *Long Branch Commission* v. *Dobbins,* 32 *Id.* 659), as well as implied in section 13 of the *Certiorari* act of 1903. *Pamph. L., p.* 347. That this is a proper case, in view of the facts already discussed, is plain, and it will be so ordered. But a new assessment should be made. The bulk of the lands covered by the present assessment are already liable to some assessment, and up to the reference to the commissioners no irregularity in the proceedings is manifested that calls for our corrective action under the act of 1881, page 194. *Gen. Stat., p.* 3404, *pl.* 547. By that act this court is empowered to ascertain and determine the proper amount to be assessed; and it is made its duty to make a proper assessment in all cases in which a lawful assessment can be made. *Elizabeth* v. *Meeker,* 16 *Vroom* 157, 160. If the assessment appears to be just and fair, but is set aside only for irregularity in procedure, the court may adopt it as its own. *Brown* v. *Union,* 33 *Id.* 142, 147; *affirmed,* 36 *Id.* 601; *Brewer* v. *Elizabeth,* 37 *Id.* 547, 550; *Simmons* v. *Millville,* 46 *Id.* 177, 180; *Batchelor* v. *Avon-by-the-Sea, Id.* 449; *reversed,* 49 *Id.* 503, but on another ground. But if the facts essential as the ground work for such new assessment are not before the court, an order will be made to a Supreme Court commissioner to take testimony, to be reported to the court for further action. *Sandford* v. *Kearny,* 19 *Id.* 125. By the act of 1871, page 123, included in the 1874 revision of the *Certiorari* act as section 10 (*Rev., p.* 99; *Gen. Stat., p.* 369), the court was empowered to appoint its own commissioners to make a new assessment. See *Sandford* v. *Kearny,* 22 *Id.* 473; *Ryerson* v. *Passaic,* 11 *Id.* 118. But that section is not part of the *Certiorari* act as revised in 1903, and seems to have disappeared from the statute book. A section of the city charter, however (*Pamph. L.* 1871, *p.* 1126, § 66), if still in force, appears to give the court power to appoint a new commission to reassess, and this appears to

us to be the practical course to pursue, in view of the extensive nature of the improvement, the amount of territory covered, and the questions involved. Counsel may be heard on this subject.

As the matter goes back for reassessment, it is proper to deal with the special points made by individual prosecutors. The railroad company claims that it should not be assessed at all, and we think that as to its right of way strip, this claim is well founded. Its railroad runs on a high trestle resting on stone or concrete piers built in the marsh, and by dumping from the trestle an embankment may be gradually substituted. In any case, the question of drainage is quite immaterial to the railroad company. If the trestle stood in a pond it would make no difference to it. There is manifestly no benefit to this property for the purposes for which it is used. And this is the test in such case. *New Jersey Railroad* v. *Elizabeth,* 8 *Vroom* 330; *Erie Railroad* v. *Paterson,* 43 *Id.* 83; *New York Bay Railroad Co.* v. *Newark,* 48 *Id.* 270. But the railroad owns, besides the right of way, over sixty city lots, some adjoining the right of way strip, some disconnected from it. It does not appear whether these lands are used in whole or part for railroad purposes. If not so used, they are assessable like any other lands; if so used, and if benefited for such purposes by the sewer, they are assessable, not to the extent of enhancement of market value, but to the extent of benefit for railroad purposes. *Erie Railroad Co.* v. *Paterson, supra.* This will be a legitimate line of inquiry upon the proceedings for reassessment.

Prosecutor Thomas Hill claims that he derives no benefit because he had a private sewer adequate for all purposes and which could, and as he says should, have formed a part of the new sewer. But the city was under no obligation to make use of an existing sewer. *State* v. *Jersey City,* 1 *Vroom* 118. The case of *Fiacre* v. *Jersey City,* 5 *Id.* 277, turned on the point that there was no statutory authority to build a second sewer in the same street, and it does not apply here. The commissioners were not required to adopt Hill's private sewer. On the other hand, the control of the streets and

drainage system is vested in them, and it was for them to judge of the necessity for the sewer. The point has been adjudged adversely to Hill in *Atchison* v. *Price,* 45 *Kan.* 296; *St. Joseph* v. *Owen,* 110 *Mo.* 445, and *Philadelphia* v. *Odd Fellows' Hall Association,* 168 *Pa.* 105. Moreover, he has a distinct benefit from the new sewer because of a greatly improved outlet for the drainage. Hence, his lots are assessable; the amount of benefit to be determined by future inquiry.

Lastly, the Kiernan prosecutors. Their special claim is that they cannot be assessed because the sewer runs through their private property, and that their title to this property (land within the lines of York street) has been adjudicated in *Kiernan* v. *Jersey City,* 51 *Vroom* 273. But this is aside from the question of benefit to their other lands. They have not taken any proceedings in ejectment to get rid of the trespassing sewer; and until they actually do get rid of it, they are benefited by it. Should they be held non-assessable in this cause they then could readily assent to the *status quo,* open York street, and get their sewer for nothing. Even if they do not assent, the city may take the required lands by condemnation and thus legalize the present occupation of them. *Pamph. L.* 1871, *p.* 1129, §§ 76, 77, 78. If an ejectment were begun, its prosecution could doubtless be enjoined pending the institution and completion of condemnation proceedings. In *State, Vanderbeck, prosecutor,* v. *Jersey City,* 5 *Dutcher* 441, 452, a similar situation was presented, and while the *status* of the disputed tract, whether as a street or way, or private property was unsettled, the court refused to go into it, and held that even if it were private property, the validity of the assessment would not be impaired. We are clear that upon the present *status* the Kiernan interests are not exempt from assessment.

The assessment, for general reasons already given, will be set aside *in toto,* and counsel will have an opportunity to express their views on the method of reassessment, whether by this court or by a new commission. Prosecutors are entitled to costs.