DELAWARE RIVER TRANSPORTATION COMPANY, PROSE-
CUTOR, v. INHABITANTS OF THE CITY OF TRENTON.

Argued June 4, 1913—Decided March 4, 1914.

1. The act of 1911, page 233, for the improvement by municipal
   authority of harbors and water fronts in cities fronting on
   navigable or tidal waters, authorizes the acquisition of wharf
   property by such cities under the right of eminent domain for
   the purposes specified in the act.
2. The word "land" in its generic legal sense embraces wharves.
3. Ownership of land by a common carrier does not render such
   land immune from the exercise of the right of eminent domain.
4. The "board of harbor commissioners" authorized by *Pamph. L.*
   1911, *p.* 233, is a municipal agency and not a corporation, and
   a written recommendation in the name of such board, signed by
   all its members, is sufficient under section 7 of the act as a
   foundation for the acquisition of real estate by the city for the
   purposes of the act.
5. The "appropriation of the estimated cost, or part thereof" of the
   acquisition of several parcels of real estate, need not be specif-
   ically apportioned to specified parcels of those included in the
   recommendations of the board.
6. The making of a recommendation by the board for the acqui-
   sition of land implies that that body considered such land "suit-
   able or convenient for use or improvement in any manner au-
   thorized by the act."
7. A resolution by the finance body of the city that "it is the sense
   of this body that" certain land "should be acquired" fulfills the
   requirement of the act of 1911, page 233, that said body "shall
   by resolution determine that the same should be acquired."
8. The right to take advantage of the act of 1911, page 233, is not
   dependent upon previous ownership by the municipality of any
   land or water front available for the purposes of the act.
9. Whether property sought to be acquired, if of the character de-
   scribed in the act, is in fact "suitable" for the purposes of the
   act, is a question committed by the legislature to the board for
   its decision.

On *certiorari.*

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER
and KALISCH.

For the prosecutor, *Gilbert Collins* (*Peter Backes* and *Lin-
ton Satterthwaite* on the brief).

For the defendant, *Charles E. Bird.*

The opinion of the court was delivered by

PARKER, J. The writ brings up an order of Mr. Justice Trenchard, in a course of procedure regulated by the Eminent Domain act of 1900 (*Pamph. L., p.* 79; *Comp. Stat., p.* 2182), appointing commissioners to ascertain the amount of compensation to be paid to prosecutor for the taking of lands, partly upland and partly wharf property on the Delaware river, in the city of Trenton. The power of the city to exercise the right of eminent domain respecting this property is rested on a statute of 1911 (*Pamph. L., p.* 233), authorizing the appointment of harbor commissioners in cities fronting on navigable waters, &c. The constitutionality of the act is supported by respondent, but as it is not attacked by counsel for prosecutor we have not considered it. The adoption by Trenton of what is known as the "Walsh act" (*Pamph. L.* 1911, *p.* 462), as a city charter, seems to have resulted in the assumption by the city commission under that act of the powers and duties of the harbor commissioners under the other act, and no question is raised on this score.

The first point made is that the property of prosecutor sought to be taken consists wholly or in part of wharf property, and that the Harbor Board act confers no power to acquire such property. Bearing in mind that the general scheme of the act appears to be the municipal acquisition, control, improvement and exploitation of water front property on navigable waters, we note that section 4 of the act gives the board control of all water front property at any time belonging to the city, including docks, wharves, &c., and the power to improve by the construction of wharves and similar structures, and to raise revenue by leasing such property. The power of eminent domain is conferred by section 7 and covers the acquisition of "any upland or riparian land or rights, or lands under water, or any estate, rights, title or interest therein, within the city, suitable or convenient in the opinion of said board for use or improvement in any manner authorized by this act." Prosecutor takes the narrow view

FEBRUARY TERM, 1914. 481

*56 Vroom.*        Delaware River Trans. Co. v. Trenton.

that this language does not embrace a wharf. We are unable to concur in this view. Whatever may be the precise definition of a wharf, and there are many of them (*Bouv. L. Dict., tit. "Wharf;"* 40 *Cyc.* 894; 30 *Am. & Eng. Encycl. L., 2d ed.,* 469), or the precise sense in which the word is used in this act (*Cf. Wharf act, Comp. Stat., p.* 5856), wharves are classified in section 4 as "Water Front Property," and there can be no question that they are embraced in the generic word "land," in section 7, which speaks, as we have seen, of "upland or riparian land or rights, or lands under water." *Smith* v. *New York City,* 68 *N. Y.* 552; see *State, Bentley* v. *Jersey City,* 1 *Dutcher* 530. So, if we imagine a "wharf" beginning on the upland, crossing the *ripa,* and supported by piles or masonry resting in land under water, it may partake of all three characteristics of this statutory classification and still be well within its purview. In fact, as appears by the photographs put in evidence, the "wharf" in question appears to be a mere bulkhead, commonly so called, facing the water and partly submerged at high tide, and perhaps at all tides, and backed by filling on which stands a warehouse. It does not appear to project beyond the ordinary shore line; but be this as it may, the whole property, natural and artificial, is land, and, as we have said, embraced in the statutory terms and subjected to the power of condemnation. We deem the first point to be without substance.

The next argument is that the prosecutor is a common carrier, and therefore that the act should not be held to apply to its property unless it does so in clear and unmistakable terms. Counsel cites no authorities in support of this proposition, and we know of none. If correct, it would mean that if a city had general authority to acquire land for a city hall, it would be powerless to condemn property that happened to be owned and used by an express company as its office. We think the proposition answers itself.

Next, it is urged that the harbor board "did not act in its corporate capacity," in recommending the acquisition of this land. The assumption appears to be that it is a corporation, but we think this is unfounded. An examination of the act,

so far from indicating that a corporation was created, shows on the contrary that it is only a municipal agency; that it recommends to the city finance board the acquisition of property, but the recommendation is that the property "be acquired by said city;" any purchase is "on behalf of said city" and the condemnation, if there be one, is "in the name and on behalf of said city." There is no provision in the act laying down any form of procedure for a recommendation by the board, and so there is no legal necessity for action like that of a board of directors. The return shows a written recommendation for the acquisition of this property, signed by every member of the board. This is amply sufficient to comply with the statute in that regard.

The next point relates to the sufficiency of the appropriation by the city commission. Section 7 says that upon the recommendation just discussed, if the (finance) "board or body shall by resolution determine that the same should be acquired, and shall make an appropriation of the estimated cost, or any part thereof, for said purpose," the board may proceed to purchase or condemn in the name of the city. The estimated cost of all the land recommended for acquisition was about $75,000; the amount appropriated by the finance board was $50,000. The argument seems to be that the appropriation if not enough for the whole, should be specifically made applicable to a designated part of the property to be acquired, but we find no such idea in the language of the act, which seems to be intentionally different from section 76 of the School act of 1903. *Wendel* v. *Board of Education,* 47 *Vroom* 499.

Again, it is argued that the recommendation does not comply with the statute as to its contents. Section 7 says that when the board shall deem it advisable to acquire lands, &c., "suitable or convenient in the opinion of said board for use or improvement in any manner authorized by this act," said board may recommend, &c. The recommendation said that in accordance with the provisions of an act (giving its title in full) the undersigned members of the board  *   *  . * under and by virtue of the provisions of said act, do hereby

recommend that it is advisable in the opinion of said board to acquire the lands," &c., designating them, "for use and improvement under said act." It is claimed that the recommendation falls for want of a recital that the land in question is suitable or convenient in the opinion of said board, &c. But, manifestly, as we think, the making of the recommendation implies an opinion of suitability and convenience.

Next, the resolution of the finance body (the council) is attacked. The act provides that upon the recommendation, "if said board or body (the finance body) shall by resolution determine that the same should be acquired and shall make an appropriation," &c. The resolution challenged recited the recommendation fully, and then proceeds: "therefore be it

"*Resolved*, That it is the sense of this body that the same should be acquired" and then goes on to authorize purchase or condemnation, and to appropriate, as already stated. It is said that this resolution is not a determination that the land shall be acquired; but this is not the language of the act. The statutory resolution is that it should, *i. e.*, ought to, be acquired; and such a resolution is before us; for to say "it is the sense of this body that the same should be acquired" is as effective as to say "resolved, that the same should be acquired." Both are expressions of opinion; and no more than that (on this phase of the case) is called for by the act. The cases of *Northern Railroad Co.* v. *Englewood, 33 Vroom* 191, and *Dashe* v. *Freeholders, 50 Id.* 431, are not in point; the first involved alternative action by the public body, and the second was under a statute expressly requiring a determination that a bridge was a public necessity.

We see no merit in the point that the act of 1911 is inapplicable unless the city already owns some water front of the character described in the act, and deem it unnecessary to discuss. Nor is there substance in the claim that in fact part of the property recommended was not suitable for the purposes of the act. Assuming this for the sake of argument, it is the opinion of the harbor board as to suitability and not *aliunde* proof on the subject that underlies the jurisdiction to purchase or condemn.

An examination of all the arguments advanced leads us to the conclusion that there is no merit in any of them. The proceedings under review are accordingly affirmed.